REVISED AUGUST 4, 2008

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 14, 2008

Charles R. Fulbruge III
Clerk

No. 07-30611

STUART KANE; LISA PHILLIPS KANE

Plaintiffs - Appellants

v.

NATIONAL UNION FIRE INSURANCE COMPANY; QWEST
COMMUNICATIONS INC; DAVID A COMSTOCK

Defendants - Appellees

v.

AARON CAILLOUET

Trustee - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, WIENER, and ELROD, Circuit Judges.

PER CURIAM:

Plaintiffs-appellants Stuart and Lisa Phillips Kane and trustee-appellant Aaron Caillouet appeal the district court's grant of summary judgment for defendants-appellees on the grounds that the Kanes were judicially estopped from pursuing their personal injury action after failing to include it in their Chapter 7 bankruptcy schedules, and consequently that the trustee's motion to be substituted for the Kanes in that action was moot, relying entirely on our

decision in Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.), 374 F.3d 330 (5th Cir. 2004). We REVERSE and REMAND.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 18, 2002, Stuart Kane was involved in a car accident with a vehicle driven by Daniel Comstock while Comstock allegedly was acting in the course and scope of his employment with Qwest Communications ("Qwest"). On July 19, 2002, Stuart and Lisa Kane (the "Kanes") filed this lawsuit in Louisiana state court seeking damages from Comstock and Qwest (collectively, "Defendants"), and Qwest's insurer, National Union Fire Insurance Company,[1] arising out of the car accident. On October 13, 2005, while their lawsuit was pending in state court, the Kanes filed a Chapter 7 bankruptcy. They failed to list their personal injury claim on the relevant bankruptcy schedules as is required. The Kanes' bankruptcy trustee, Aaron Caillouet (the "Trustee"), was never informed of the claim during the pendency of the bankruptcy proceedings. On March 13, 2006, the Kanes' bankruptcy resulted in a no-asset discharge.

On July 10, 2006, Defendants filed a motion for summary judgment in state court arguing that the Kanes should be judicially estopped from pursuing their lawsuit due to their failure to list it as an asset in their bankruptcy proceedings. Subsequently, the Kanes filed a motion in the bankruptcy court to reopen their bankruptcy proceedings so that the Trustee could administer this previously undisclosed lawsuit and other undisclosed debts on behalf of the estate and the creditors, which Defendants opposed. The bankruptcy court granted the Kanes' motion to reopen on September 28, 2006.

Defendants removed the case to federal court on October 20, 2006, invoking the federal district court's "related to" bankruptcy jurisdiction under

---

[1] National Union Fire Insurance Company was dismissed from the Kanes' personal injury action on January 6, 2005, prior to Qwest's removal of this case to federal court.

28 U.S.C. §§ 1334(c)(2) and 1452. On November 22, 2006, Defendants moved for summary judgment in federal district court, again arguing that the Kanes should be judicially estopped from pursuing their claim as a matter of law, citing this court's decision in In re Superior Crewboats, Inc., 374 F.3d 330. On January 30, 2007, the Trustee moved to substitute himself for the Kanes as the real party in interest in the lawsuit. On May 29, 2007, the district court granted Defendants' motion for summary judgment, applying judicial estoppel to bar the Kanes from pursuing their claim and summarily dismissing as moot the Trustee's motion to be substituted as the real party in interest, a result the district court perceived In re Superior Crewboats, Inc. prescribed. This timely appeal followed.

## II. STANDARD OF REVIEW

"We review a grant of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." In re Katrina Canal Breaches Litig., 495 F.3d 191, 205–06 (5th Cir. 2007) (citing Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000)), cert. denied, Xavier Univ. of La. v. Travelers Cas. Prop. Co. of Am., 128 S. Ct. 1230 (2008) and Chehardy v. Allstate Indem. Co., 128 S.Ct. 1231 (2008). Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). But, because "judicial estoppel is an equitable doctrine, and the decision whether to invoke it [is] within the court's discretion, we review for abuse of discretion" the lower court's decision to invoke it. Browning Mfg. v. Mims (In re Coastal Plains, Inc.), 179 F.3d 197, 205 (5th Cir. 1999). "However, an abuse of discretion standard does not mean a mistake of law is beyond appellate correction, because [a] district court by definition abuses its discretion when it makes an error of law." In re Superior Crewboats, Inc., 374 F.3d at 334 (internal citations and quotation marks omitted).

3

"Accordingly, the abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." In re Coastal Plains, Inc., 179 F.3d at 205 (internal quotation marks omitted).

We also review for abuse of discretion a district court's denial of a motion to substitute the trustee for the debtor as the party plaintiff. Wieburg v. GTE Sw. Inc., 272 F.3d 302, 308 (5th Cir. 2001) (addressing a motion to substitute as the proper party in interest under Rule 17(a) of the Federal Rules of Civil Procedure) (citing Collateral Control Corp. v. Deal (In re Covington Grain Co.), 638 F.2d 1357, 1360 (5th Cir. 1981) (holding that a Rule 25 motion to substitute the real party in interest following a transfer of interest while the litigation is pending is reviewed for abuse of discretion)). Questions of law, including interpretation and application of the Bankruptcy Code, are reviewed de novo. State Farm Life Ins. Co. v. Swift (In re Swift), 129 F.3d 792, 795 (5th Cir. 1997).

## III.  DISCUSSION

The district court relied on this court's decision in In re Superior Crewboats, Inc., 374 F.3d 330, to conclude as a matter of law that the equitable doctrine of judicial estoppel should apply to bar the Kanes from pursuing their claim, and as a result, that the Trustee's motion to substitute himself as the real party in interest is moot. Also, Defendants argue for the first time on appeal that even if the Trustee's motion to substitute himself as the real party in interest was improperly denied as moot, relying on our decision in Wieburg, 272 F.3d 302, it should be denied as untimely under Rule 17(a). Because we conclude that the district court asked too much of our decision in In re Superior Crewboats, Inc., we reverse and remand. Defendants' Rule 17(a) argument should be presented first to the district court.

A. Background Legal Principles

Pursuant to the Bankruptcy Code, debtors are under a continuing duty to disclose all pending and potential claims. 11 U.S.C. § 521(1); In re Coastal

Plains, Inc., 179 F.3d at 207–08. Generally, if a debtor fails to schedule an asset, and the trustee later discovers it, the trustee may reopen the bankruptcy case to administer the asset on behalf of the creditors. 11 U.S.C. § 350(b); 3 COLLIER ON BANKRUPTCY § 350.03[1] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2008). As one of our bankruptcy courts has observed:

> It is not serendipitous that the Bankruptcy Code has an explicit provision that prevents the loss of assets that a debtor fails to disclose in [b]ankruptcy [s]chedules. It happens all the time, especially with claims. And when it does, cases are routinely reopened, in accordance with the statute, to administer those assets.

In re Miller, 347 B.R. 48, 53 (Bankr. S.D. Tex. 2006) (citations omitted).

Section 541 of the Bankruptcy Code provides that virtually all of a debtor's assets, including causes of action belonging to the debtor at the commencement of the bankruptcy case, vest in the bankruptcy estate upon the filing of a bankruptcy petition. 11 U.S.C. § 541(a)(1); In re Swift, 129 F.3d at 795; 5 COLLIER ON BANKRUPTCY § 541.08. Thus, a trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed. 11 U.S.C. §§ 323, 541(a)(1); Wieburg, 272 F.3d at 306.

"Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned" by the trustee to the debtor pursuant to § 554.[2] Parker v. Wendy's Int'l, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004); see 11 U.S.C. § 554; 5 COLLIER ON BANKRUPTCY §§ 541.04, 541.08. In a Chapter 7 case, "[a]t the close of the bankruptcy case, property of the estate that is not abandoned under § 554 and that is not

---

[2] Property may also be exempted from the bankruptcy estate notwithstanding § 541, see § 522(b), but the exemption provisions are not at issue in this case.

administered in the bankruptcy proceedings"—including property that was never scheduled—"remains the property of the estate." Parker, 365 F.3d at 1272; 11 U.S.C. § 554(d); 5 COLLIER ON BANKRUPTCY § 541.08. But, "upon abandonment . . . the trustee is . . . divested of control of the property because it is no longer part of the estate . . . . Property abandoned under [§] 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed." 5 COLLIER ON BANKRUPTCY § 554.02[3]; 11 U.S.C. § 554; see In re Lair, 235 B.R. 1, 22 (Bankr. M.D. La. 1999).

"Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." In re Superior Crewboats, Inc., 374 F.3d at 334 (citing Brandon v. Interfirst Corp., 858 F.2d 266, 268 (5th Cir. 1988)). "'The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest.'" Id. (quoting In re Coastal Plains, Inc., 179 F.3d at 205). As an equitable doctrine, "[g]enerally, judicial estoppel is invoked where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" Id. at 334–35 (quoting Scarano v. Cent. R.R. Co., 203 F.2d 510, 513 (3d Cir. 1953)).

We have recognized three particular requirements that must be met in order for judicial estoppel to operate: "(1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent." Id. at 335 (citations omitted). In the context of judicial estoppel, "inadvertence" requires either that "the debtor . . . lacks knowledge of the undisclosed claim[ ] or has no motive for [its] concealment." Id. (emphasis in original). In this circuit, we have applied judicial estoppel to bar an unscheduled claim when others, the debtors or other insiders, would benefit to the detriment of creditors if the claim were permitted to proceed. See id.; In re Coastal Plains, Inc., 179 F.3d 197.

B.  Application to the Case at Bar

The district court held as a matter of law that our decision in In re Superior Crewboats, Inc., 374 F.3d 330, controls the outcome of the case before us.  We disagree.

In In re Superior Crewboats, Inc., we were asked only to consider whether debtors could pursue claims for their own benefit that they failed to disclose in their bankruptcy schedules.  Id. at 334.   In that case, one of the debtors was allegedly injured disembarking a ship owned and operated by the defendant.  Id. at 333.  Subsequently, he and his wife filed for Chapter 13 bankruptcy and failed to disclose their potential claim.  Id.  While their bankruptcy case was pending, the debtors sued the defendant in state court without amending their bankruptcy schedules to include the claim.  Id.  The debtors' bankruptcy was converted from Chapter 13 to Chapter 7.  Id.  And, at the creditors' meeting required under 11 U.S.C. § 341, the debtors told the bankruptcy trustee about their claim against the defendant, but represented that it was proscribed by the statute of limitations.  Id.

Shortly after the meeting, the trustee formally abandoned the claim pursuant to 11 U.S.C. § 554, id., and the interest in the claim reverted to the debtors as though the bankruptcy had never been filed, see § 554; 5 COLLIER ON BANKRUPTCY § 554.02[3]; see also In re Lair, 235 B.R. at 22; In re CVA Gen. Contractors, Inc., 267 B.R. 773, 780 n.7 (Bankr. W.D. Tex. 2001).  A few months after the debtors received their discharge, they responded to an admiralty limitation of liability proceeding filed by the defendant with a complaint to recover damages for the one debtor's alleged injury.  In re Superior Crewboats, Inc., 374 F.3d at 333.  The defendant in that case informed the trustee that the debtors were continuing to pursue their prepetition claim, and the trustee moved to reopen the bankruptcy.  Id.  The defendant filed a motion to dismiss arguing that the debtors' "claim was barred by judicial estoppel and Federal Rule of Civil

Procedure 17(a), which requires a suit to be brought by the real party in interest." Id. at 334. In response to the defendant's motion for summary judgment, the trustee filed a motion to substitute himself as the proper party in interest under Rule 17(a). Id. at 333–34. We concluded, on those facts, that the debtors were barred from pursuing their claim by the equitable doctrine of judicial estoppel, and that the trustee's Rule 17(a) motion was moot after we granted summary judgment for defendants. Id. at 336.

There, because the trustee had abandoned the claim, he was not the real party in interest and was not entitled to be substituted as such. Rather, following the trustee's abandonment, the interest in the claim had reverted to the debtors, who then stood to collect a windfall from their failure to schedule the asset at the expense of their creditors. In the case before us, the Kanes' personal injury claim became an asset of their bankruptcy estate when they filed their Chapter 7 petition. The Trustee became the real party in interest in the Kanes' lawsuit at that point and never abandoned his interest therein. Thus, unlike in In re Superior Crewboats, Inc.—where the debtors stood to benefit directly from pursuing their claim at the expense of their creditors, and the district court's dismissal of the claim against the debtors mooted the trustee's motion to substitute as a matter of law—here, the Trustee is the real party in interest and has reopened the Kanes' Chapter 7 bankruptcy to pursue the Kanes' claim for the benefit of the estate's creditors.

Moreover, the Kanes stand to benefit only in the event that there is a surplus after all debts and fees have been paid. As the bankruptcy court aptly observed in In re Miller, "There is a statutorily explicit difference between cases in which property is not listed in the [b]ankruptcy [s]chedules but is disclosed and administered (as in the Superior Crewboats case . . .) and the instant case in which property was not disclosed and was not administered." 347 B.R. at 53. Consequently, In re Superior Crewboats, Inc. does not require the application of the equitable doctrine of judicial estoppel in this case as a matter of law.

8

Similarly, neither does it follow from our decision in In re Coastal Plains, Inc., 179 F.3d 197, that judicial estoppel should apply in this case. Key to our decision in that case was the fact that an insider—the CEO of the debtor corporation who formed a new corporation and purchased the assets of the debtor corporation at a fraction of their value due to his own failure to disclose claims at issue in the case—would benefit in great disproportion to the estate. Id. at 202–03, 212. In deciding that the equitable doctrine of judicial estoppel should apply in that case, we observed:

> Coastal [Plains, Inc.] avoided paying its debts by filing bankruptcy. Yet [Industrial Clearinghouse, Inc.], formed by Coastal's CEO, purchased Coastal's assets, including the undisclosed $10 million claim against [the defendant], for only $1.24 million, and continued to sell [the defendant's] former inventory at discounted prices, then obtained a net judgment of $3.6 million against [the defendant] on the undisclosed claims. For facts similar to those at hand, the bankruptcy court's interpretation of the "inadvertence" exception for judicial estoppel [(accepting reliance on the advice of counsel as an excuse for failing to schedule the claim in bankruptcy)] would encourage bankruptcy debtors to conceal claims, write off debts, purchase debtor assets at bargain prices, and then sue on undisclosed claims and possibly recover windfalls . . . .
> Needless to say, judicial estoppel is intended to prevent just such a process.

Id. at 213.

In this case, no such equitable concerns inhere. Rather, the only way the Kanes' creditors would be harmed is if judicial estoppel were applied to bar the Trustee from pursuing the claim against Defendants on behalf of the estate. In this case, equity favors the Trustee. For as Judge Easterbrook noted in a Seventh Circuit case suggesting that a bankruptcy trustee should be able to pursue a claim on behalf of the creditors that the debtor himself would be judicially estopped from pursuing:

> [The debtor's] nondisclosure in bankruptcy harmed his creditors by hiding assets from them. Using this same nondisclosure to wipe out [the debtor's claim against the defendant] would complete the job by denying creditors even the right to seek some share of the recovery. Yet the creditors have not contradicted themselves in court. They were not aware of what [the debtor] has been doing behind their backs. Creditors gypped by [the debtor's] maneuver are hurt a second time by the district judge's decision. Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application.

Biesek v. Soo Line R.R. Co., 440 F.3d 410, 413 (7th Cir. 2006).

With respect to Defendants' argument that even if the Kanes' claim is not barred by judicial estoppel, our decision in Wieburg, 272 F.3d 302, requires that the Trustee's motion to substitute as party plaintiff must be denied under Rule 17(a) of the Federal Rules of Civil Procedure, we are initially unpersuaded. But Defendants did not raise this issue in the district court. The district court should have the first crack at it. See Jethroe v. Omnova Solutions, Inc., 412 F.3d 598, 601 (5th Cir. 2005). Also unpersuasive, and raised for the first time on appeal, is Defendants' argument that the Trustee's motion to substitute was untimely because it was not filed until after Defendants moved for summary judgment on judicial estoppel grounds. The district court should address this first.

## IV. CONCLUSION

For the reasons stated above, we hold that In re Superior Crewboats, Inc., 374 F.3d 330, does not control the outcome of this case, and that the district court abused its discretion by concluding as a matter of law that it does. Consequently, we REVERSE and REMAND for further proceedings consistent with this opinion.