Marsha NORRIS, Appellant,

v.

**BROOKSHIRE GROCERY COMPANY, Appellee.**

No. 05–11–00179–CV.

Court of Appeals of Texas, Dallas.

Feb. 29, 2012.

John A. Albritton, Rockwall, TX, for Appellant.

Barton Lance Ridley, Dawn Woelfel Hansen, Touchstone, Bernays, Johnstone, Beall, Smith, Dallas, TX, for Appellee.

Before Justices MORRIS, FRANCIS, and LANG–MIERS.

## OPINION

Opinion by Justice FRANCIS.

Marsha Norris appeals the trial court's take-nothing summary judgment on her slip-and-fall lawsuit against Brookshire Grocery Company. In two issues, Norris challenges both grounds asserted in Brookshire's motion for summary judgment, judicial estoppel and lack of standing. For reasons set out below, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

Norris filed her lawsuit against Brookshire on September 14, 2009. While the lawsuit was pending, Norris (along with her husband, who is not a party to this suit) filed a voluntary petition for Chapter

7 bankruptcy in the United States Bankruptcy Court for the Northern District of Texas. As part of her petition, Norris filed schedules of assets and liabilities. On the Personal Property schedule, Norris did not list this lawsuit against Brookshire despite the prompt to list "[o]ther contingent and unliquidated claims of every nature." Likewise, in the section of the petition labeled "Statement of Financial Affairs," Norris was asked to list "all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case." Norris listed a "nontax federal debt case," but did not disclose this lawsuit. Norris, who was represented by counsel in the bankruptcy case, signed both the schedules and the financial affairs statement under penalty of perjury.

Thirteen days after filing the bankruptcy petition, Norris filed a motion to dismiss the bankruptcy case "without prejudice to re-filing as [the Norrises] desire to work a payout with creditors." A copy of the motion was mailed to the United States Trustee and the Chapter 7 Trustee as well as creditors listed in Norris's petition. No one objected to dismissal, and the bankruptcy judge dismissed the petition after considering the motion and "find[ing] cause for this motion to be [g]ranted."

One week later, Brookshire filed a motion for summary judgment asserting two grounds, both rooted in Norris's failure to disclose this lawsuit in her bankruptcy schedules. First, Brookshire asserted that Norris was judicially estopped from pursuing this lawsuit and, second, she lacked standing. Attached to the motion were (1) Norris's bankruptcy petition and schedules, (2) her motion to dismiss the bankruptcy, (3) the order dismissing the bankruptcy case, and (4) the certification of no objections to the motion to dismiss. Norris filed a response to the motion and attached her affidavit. After considering the evidence, the trial court granted Brookshire's motion.

We review a summary judgment de novo. To prevail, the movant must show there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). When a defendant moves for summary judgment on an affirmative defense, the defendant must conclusively prove each element of the defense as a matter of law. *Cricket Commc'ns, Inc. v. Trillium Indus., Inc.,* 235 S.W.3d 298, 303 (Tex.App.-Dallas 2007, no pet.). When reviewing a summary judgment, we accept all evidence favorable to the nonmovant as true, indulge the nonmovant with every favorable reasonable inference, and resolve any doubt in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). The summary judgment will be affirmed only if the record establishes the movant conclusively proved all essential elements of the movant's cause of action or defense. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

In her first issue, Norris contends the trial court erred in granting summary judgment on the basis of judicial estoppel. Because Brookshire invoked judicial estoppel in the context of a prior bankruptcy proceeding involving Norris's duty under the bankruptcy code, we apply federal law to determine whether the doctrine applies here. *Cricket Commc'ns,* 235 S.W.3d at 304.

Judicial estoppel is a "common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *Cricket Commc'ns,* 235 S.W.3d at 304; *In re Coastal Plains,* 179 F.3d 197,

205 (5th Cir.1999). The purpose of the doctrine is to protect the integrity of the judicial process by preventing a party from "playing fast and loose" with the courts to suit the party's own purposes. *Cricket Commc'ns,* 235 S.W.3d at 304; *In re Coastal Plains,* 179 F.3d at 205. It is generally applied when a party attempts to obtain an unfair advantage by intentionally asserting inconsistent claims in different courts. *Cricket Commc'ns,* 235 S.W.3d at 304; *In re Coastal Plains,* 179 F.3d at 205.

In the bankruptcy context, a party is judicially estopped from asserting a cause of action that is not disclosed in the debtor's schedules or disclosure statements. *Cricket Commc'ns,* 235 S.W.3d at 304. But there are limits to the doctrine of judicial estoppel based upon bankruptcy pleadings. *Id.; In re Coastal Plains,* 179 F.3d at 206–07. Specifically, to establish judicial estoppel involving a bankruptcy case, three elements must be proven: (1) the party to be estopped has taken a position clearly inconsistent with his previous position; (2) the previous court must have accepted the previous position; and (3) the party to be estopped has acted intentionally, not inadvertently. *Cricket Commc'ns,* 235 S.W.3d at 304; *In re Coastal Plains,* 179 F.3d at 206–07, 210.

Here, Norris does not dispute that she had a duty to disclose the Brookshire lawsuit in her bankruptcy schedules but failed to do so. Rather, she argues the bankruptcy court never granted any relief that required "accepting" the accuracy of her schedules and that her failure to list the claim was inadvertent. We begin our analysis with the acceptance prong of judicial estoppel.

Judicial acceptance does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits. *In re Coastal Plains,* 179 F.3d at 206. Rather, judi-cial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of final disposition. *Id.* Although the Fifth Circuit has noted that the "contours" of this prong are vague, it has in practice required that the prior court "actually accept" the party's earlier position. *See Hopkins v. Cornerstone Am.,* 545 F.3d 338, 348 n. 2 (5th Cir.2008). In a bankruptcy context, examples of a court accepting a debtor's claims include cases where the debtor receives a discharge based on information he gives about his bankruptcy estate, *see Horsley–Layman v. Adventist Health Sys./Sunbelt, Inc.,* 221 S.W.3d 802, 808 (Tex.App.-Fort Worth 2007, pet. denied), and where the court issues a "no asset" discharge, *Brown v. Swett & Crawford of Tex., Inc.,* 178 S.W.3d 373, 381 (Tex.App.-Houston [1st Dist.] 2005, no pet.).

Here, the record shows that within days of Norris filing her bankruptcy petition, she filed a motion to dismiss. A debtor who has filed a petition under Chapter 7 of the Bankruptcy Code does not have an absolute right to obtain dismissal of his or her case. *See In re Waldrep,* 20 B.R. 248, 250 (Bankr.W.D.Tex. 1982). Rather, dismissal of such cases is governed by the "for cause" requirement of section 707(a) of the Bankruptcy Code. *See* 11 U.S.C.A. § 707(a) (West.Supp. 2011); *In re Waldrep,* 20 B.R. at 250. Although section 707(a) does not expressly refer to a voluntary dismissal by the debtor, courts commonly conclude that it applies to such a motion. *In re Hull,* 339 B.R. 304, 307 (Bankr.E.D.N.Y.2006).

In her dismissal motion, Norris asserted that she wanted to "work a payout" with her creditors. No objections were raised. The bankruptcy judge "considered" the motion and found "the cause for this mo-

tion" to be granted. Thus, unlike those circumstances where a court actually accepts a debtor's schedules in discharging the debtor or granting a "no asset" dismissal, the court here dismissed Norris's bankruptcy early in the process so that she could work with her creditors on paying her debt. *See e.g., Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1049 (8th Cir.2006) (finding no judicial acceptance when bankruptcy did not result in discharge of debts based on information provided in schedules, but was dismissed on trustee's motion). We conclude Brookshire did not conclusively establish the acceptance prong of its judicial estoppel affirmative defense; accordingly, summary judgment on this ground was improper. Having so concluded, we need not discuss the inadvertency prong. We sustain the first issue.

The second issue addresses whether Norris lacks standing to litigate this lawsuit because of her failure to disclose this suit in her bankruptcy case.

■■■■ A court must have subject matter jurisdiction to adjudicate a dispute, and without it, the merits of a case may not be reached. *Douglas v. Delp,* 987 S.W.2d 879, 884 (Tex.1999). Standing is a prerequisite to subject matter jurisdiction. *M.D. Anderson Cancer Ctr. v. Novak,* 52 S.W.3d 704, 708 (Tex.2001). Whether a trial court has subject matter jurisdiction is a question of law that is subject to de novo review; therefore, a trial court's determination of standing is also subject to de novo review. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex.2004); *Denman v. Citgo Pipeline Co.,* 123 S.W.3d 728, 731 (Tex.App.-Texarkana 2003, no pet.). The issue of standing focuses on who may bring an action. *M.D. Anderson Cancer Ctr.,* 52 S.W.3d at 708.

■■■ Bankruptcy can affect a debtor's standing to sue. Section 541 of the Bank-

ruptcy Code provides that virtually all of a debtor's assets, including causes of action at the commencement of the case, vest in the bankruptcy estate upon the filing of a bankruptcy petition. 11 U.S.C.A. § 554(a)(1) (West 2004); *Kane v. Nat'l Union Fire Ins. Co.,* 535 F.3d 380, 385 (5th Cir.2008) (per curiam); *Martin v. Clinical Pathology Labs., Inc.,* 343 S.W.3d 885, 888 (Tex.App.-Dallas 2011, pet. denied). Thus, a trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed. 11 U.S.C.A. §§ 323, 541(a)(1) (West.2004); *Kane,* 535 F.3d at 385.

■■■■ "Once an asset becomes a part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned" by the trustee to the debtor under section 554. *Kane,* 535 F.3d at 385. In a Chapter 7 case, "[a]t the close of the bankruptcy case, property of the estate that is not abandoned under § 554 and that is not administered in the bankruptcy proceedings"—including property that was never scheduled—"remains the property of the estate." *Kane,* 535 F.3d at 385; 11 U.S.C.A. 554(d) (West 2004). Thus, even after a bankruptcy case is closed, the estate continues to retain its interest in unscheduled property.

■■■ In its motion for summary judgment, Brookshire contended that because Norris had failed to disclose this lawsuit to the bankruptcy court, the trustee did not abandon the cause of action, and it therefore remains the property of the estate. Norris, however, asserts her bankruptcy case was dismissed and, according to the plain language of 11 U.S.C. § 349(b) of the Bankruptcy Code, the effect of that dismissal was to revest the lawsuit in her. We agree with Norris.

Section 349(b)(3) provides in relevant part: "Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title ... (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C.A. § 349(b)(3) (West 2004). The basic purpose of this provision is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case. *In re Lewis*, 346 B.R. 89, 104 (Bankr.E.D.Pa.2006); *see Matter of Petty*, 848 F.2d 654, 655 (5th Cir.1988).

Under the plain wording of this statute, this lawsuit was revested in Norris as the entity who owned it immediately before the filing of the bankruptcy petition, unless the court ordered otherwise upon dismissal. The bankruptcy court made no such order, and there is nothing in the plain language of section 349(b)(3) that precludes assertion of the claim for lack of disclosure when the case is dismissed. *See B.N. Realty Assocs. v. Lichtenstein*, 21 A.D.3d 793, 798, 801 N.Y.S.2d 271, 276 (2005)(concluding that when bankruptcy court dismisses debtor's petition, section 349(b)(3) operates to "restor[e] his standing to assert his alleged counterclaims, defenses and offsets in this action, notwithstanding his failure (which we do not condone) to disclose such matters in the bankruptcy case...."); *Ass'n Res., Inc. v. Wall*, 298 Conn. 145, 166–68, 2 A.3d 873, 888–89 (2010) (concluding plaintiff had standing to assert counterclaim because bankruptcy court dismissed petition prior to administration).

In reaching this conclusion, we decline to follow our sister court's decision in *Kilpatrick v. Kilpatrick*, 205 S.W.3d 690, 701–02 (Tex.App.-Fort Worth 2006, pet. denied). In *Kilpatrick*, the court held that upon dismissal, the estate's assets revert in the debtor "only if the assets were disclosed to the bankruptcy court when the debtor scheduled his assets." The court relied upon the reasoning in *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 53–55 (S.D.N.Y.1999) to reach its holding. *Kilpatrick*, 205 S.W.3d at 702. In *Kunica*, however, the debtor had "arguably obtained the functional equivalent of a discharge" because it had "obtained its dismissal after its [bankruptcy] case was fully administered and all of its assets scheduled...." *Kunica*, 233 B.R. at 55.

Here, as stated previously, Norris filed her motion to dismiss days after filing her petition, before any administration of the bankruptcy estate, and without any impairment of her creditors' ability to collect their debts from her. *See* Jay L. Gottlieb & Brian E. Greer, *The Doctrines of Standing and Judicial Estoppel: How Actions or Omissions in Bankruptcy Proceedings May Preclude The Assertion of Claims By A Debtor In A Subsequent Action*, 9 J. Bankr.L. & Prac. 487, 506 n. 69 (2000) (acknowledging "there are certainly situations where, for example, a bankruptcy case is not fully prosecuted (i.e., a bankruptcy case is dismissed after only thirty days of its filing, with no disposition of assets), it would not appear appropriate or proportional to apply the doctrines [of standing and judicial estoppel] to preclude subsequent actions"). Under the circumstances presented here, we conclude Norris has standing to prosecute her claim; therefore, the trial court erred in granting summary judgment on this ground. We sustain the second issue.

We reverse the trial court's judgment and remand for proceedings consistent with this opinion.